IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS E. PEREZ, Secretary of Labor, United States Department of Labor,<br><br>      Plaintiff,<br><br>  v.<br><br>FATIMA/ZAHRA, INC., d/b/a LAKE ALHAMBRA ASSISTED LIVING CENTER, a California corporation; MEHRANGIZ SARKESHIK, an individual; and ABOLFAZL SARKESHIK, an individual;<br><br>      Defendants.<br>_____/ | No. C 14-2337 CW<br>ORDER GRANTING AS MODIFIED APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE AND SETTING PRELIMINARY INJUNCTION HEARING<br><br>(Docket No. 3) |

On May 21, 2014, Plaintiff Thomas E. Perez, Secretary of the United States Department of Labor (DOL), moved for a temporary restraining order (TRO) to enjoin Defendants Fatima/Zahra, Inc., d/b/a Lake Alhambra Assisted Living Center, Mehrangiz Sarkeshik, and Abolfazl Sarkeshik from interfering with Plaintiff's investigation of Defendants' workplace under the Fair Labor Standards Act (FLSA).  After reviewing the papers, the Court GRANTS Plaintiff's motion and issues the requested TRO as modified.

BACKGROUND

Lake Alhambra, which is owned by Dr. Abolfazl Sarkeshik and his wife Ms. Mehrangiz Sarkeshik, is a care center for patients with dementia, Alzhemier's disease, and mental illness.  Hart

Decl. ¶ 14.  Ms. Sarkeshik manages the staff and sets their schedules.  Id.

In 2007, an investigation by the Wage and Hour Division (WHD) of the DOL established that Lake Alhambra violated the overtime and record-keeping provisions of the FLSA.  Hart Decl. ¶ 4.  These provisions require employers to maintain accurate time and payroll records to guarantee that employees are paid a minimum wage for all hours worked and paid overtime wages when they are due.  See 29 U.S.C. §§ 206, 207, 211, 215.  As a result of the finding, Defendants agreed to come into compliance with the FLSA by paying back wages, paying overtime, and maintaining time and payroll records.  Hart Decl. ¶ 4.

In March 2014, a confidential informant lodged a complaint with WHD that Lake Alhambra was again not paying overtime.  Id. ¶ 3.  Investigator Edward Hart, Jr. was assigned to investigate the complaint.  Id.  On March 19, 2014, Investigator Hart went to Lake Alhambra to observe business operations, to interview the employer and employees about hours worked and wages paid, and to obtain documents such as payroll records.  Id. ¶ 5.  He identified himself as a WHD Investigator, stated he was conducting an investigation, and asked to speak to the manager.  Id. ¶¶ 4-5.  An employee put Ms. Sarkeshik on the phone, who yelled at Investigator Hart, saying, "You didn't tell me you were coming" and "Leave right now!"  Id. ¶ 5.  Investigator Hart overheard Ms. Sarkeshik tell the employee over the phone, "You need to get him

2

out of there or you will be fired!" Id. ¶ 7. Ms. Sarkeshik arrived and had called the police, who arrived shortly thereafter, but refused to remove Investigator Hart. Id. ¶¶ 8-9. Ms. Sarkeshik requested that Investigator Hart speak to her attorney, and while he did so, he noticed Ms. Sarkeshik speaking quickly and intently to her employees, who seemed uncomfortable. Id. ¶ 10. Some employees initially showed interest in speaking to Investigator Hart, saying, "If it's not to get anyone in trouble, we'll talk." Id. ¶ 11. However, after Ms. Sarkeshik again spoke to the employees, she told Investigator Hart in front of the employees that "no one wants to talk to you." Id. ¶ 12. Investigator Hart was able to get a record of each of the employees' names, but all of them declined to answer any of his questions. One employee stated she was uncomfortable talking to him, while another stated that Ms. Sarkeshik told the employees that if they talked to WHD, they would not have a job. Id. ¶ 13.

On March 24, 2014, Investigator Hart met with Dr. Sarkeshik and his attorney. Id. ¶ 14. Dr. Sarkeshik and his attorney agreed they would cooperate fully with the investigation and provided some documents, including some time cards and the names and addresses of employees. Id. ¶ 15. Time cards created after the end of October 2013 do not identify the date or pay period, but only the day of the week. Id. Investigator Hart sent letters to the employees at the addresses provided, but about half were returned as undeliverable. Id. ¶ 16. Investigator Hart was able

3

to speak to a few employees, who told him that Ms. Sarkeshik told them that if they received a letter from WHD, they should tell her and not respond to the letter. Id. ¶ 17. The employees stated that many others were too scared to talk to or cooperate with WHD. Id.

## LEGAL STANDARD

To obtain either a TRO or a preliminary injunction under Federal Rule of Civil Procedure 65, the moving party must demonstrate "(1) a likelihood of success on the merits; (2) a significant threat of irreparable injury; (3) that the balance of hardships favors the applicant; and (4) whether any public interest favors granting an injunction." Raich v. Ashcroft, 352 F.3d 1222, 1227 (9th Cir. 2003); see also Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 374 (2008). The Ninth Circuit has recognized that an injunction could issue if "serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor," so long as the plaintiff demonstrates irreparable harm and shows that the injunction is in the public interest. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011) (citation and internal quotation marks omitted). Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter, 555 U.S. at 22.

4

## DISCUSSION

To enforce the FLSA, Congress empowered the Secretary to investigate employers for compliance with the act, including the right to "enter and inspect such places and such records (and make such transcriptions thereof), question such employees, and investigate such facts, conditions, practices, or matters as he may deem necessary or appropriate to determine whether any person has violated any provision of this chapter, or which may aid in the enforcement of the provisions of this chapter." 29 U.S.C. § 211. The Secretary may conduct such an investigation as long as there is a "reasonable ground" for the investigation. CSG Workforce Partners, LLC v. Watson, 512 F. App'x 830, 835 (10th Cir. 2013); Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 208 (1946) (administrative investigation must be reasonable). The FLSA grants the Secretary these investigatory powers because the statute's enforcement depends "not upon continuing detailed federal supervision or inspection of payrolls, but upon information and complaints received from employees seeking to vindicate rights claimed to have been denied." Kasten v. Saint-Gobain Performance Plastics Corp., 131 S. Ct. 1325, 1333 (2011). To encourage workers to provide freely the information necessary for enforcement, the FLSA further protects workers who cooperate with the Secretary from retaliation by their employers. 29 U.S.C. § 215. This anti-retaliation provision prevents "fear of economic

retaliation from inducing workers quietly to accept substandard conditions." Kasten, 131 S. Ct. at 1333.

There is substantial evidence that, while Investigator Hart was present and afterwards, Ms. Sarkeshik threatened employees that they would lose their jobs if they cooperated with the investigation. Despite assurances by Defendants' attorney, Ms. Sarkeshik apparently continued to threaten retaliation against employees who spoke to WHD. These threats, although taken in anticipation of employees engaging in protected activity, are "no less retaliatory than action taken after the fact." Sauers v. Salt Lake Cnty., 1 F.3d 1122, 1128 (10th Cir. 1993); see also Hashimoto v. Bank of Hawaii, 999 F.2d 408, 411 (9th Cir. 1993); Lambert v. Ackerley, 180 F.3d 997, 1005 (9th Cir. 1999) (if the FLSA "is to function effectively, inspectors must be free from the threat of retaliatory discharge for identifying safety and quality problems."). Accordingly, Plaintiff is likely to succeed in establishing that Defendants engaged in retaliatory activity against their employees.

Further, Plaintiff has also demonstrated a likelihood of success on the merits of its recordkeeping FLSA claims. The records must be "clear and identifiable by date or pay period." 29 C.F.R. § 516.1. At least some of the timecards produced by Defendants do not identify the dates or pay period. Hart Decl. ¶ 15, Exs. B-C.

Plaintiff argues that irreparable harm will ensue unless injunctive relief is issued because the protections of the FLSA will not be effective. Ms. Sarkeshik's threats appear to have chilled Defendants' employees from speaking to Plaintiff. Should Ms. Sarkeshik's threats and intimidation continue, Plaintiff will not be able to gather the information necessary to conduct the investigation. Employee interviews play a crucial role in establishing WHD violations. See id. ¶ 19; Kasten, 131 S. Ct. at 1333. If Defendants are able to block Plaintiff's investigation, then Defendants' employees's rights under the FLSA may be irreparably injured. See Arcamuzi v. Cont'l Air Lines, Inc., 819 F.2d 935, 938-39 (9th Cir. 1987) (where "employees may be deterred from engaging in legitimate conduct," retaliation for the exercise of protected activity represents "possible irreparable harm far beyond economic loss").

The balance of the equities and the public interest weigh in Plaintiff's favor. The Court gives substantial weight to the fact that "the secretary seeks to vindicate a public, and not a private right." Perez v. Jie, 2014 WL 1320130, at *2 (W.D. Wash.) (quoting Marshall v. Chala Enterprises, Inc., 645 F.2d 799, 808 (9th Cir. 1983)). There is a strong public interest in favor of enforcement of the FLSA, which seeks to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living" of workers. 29 U.S.C. § 202(a). On the other hand, Defendants have no legitimate interest in preventing Plaintiff

7

from conducting what appears to be a reasonable and lawful investigation.

Plaintiff proposes a number of provisions for a TRO that he argues are necessary to prevent retaliation by Defendants. The Court adopts only those provisions that are reasonably necessary to accomplish this goal before the preliminary injunction motion can be heard. Certain provisions are aimed at requiring Defendants to "maintain accurate records . . . as required under the FLSA" and provide contact information for persons that Defendants employed within the past three years. Because this would entail a mandatory rather than prohibitory injunction and is not as urgent as the other requested terms, the Court does not adopt these provisions at this time. Plaintiff has not cited any legal authority supporting its request for an award of costs related to this motion, and so it is denied.

## CONCLUSION

Defendants Fatima/Zahra, Inc., doing business as Lake Alhambra Assisted Living Center, and its owners Mehrangiz Sarkeshik and Abolfazl Sarkeshik, along with their agents, attorneys, employees, and all those in active concert or participation with Defendants, are hereby enjoined:

1. From terminating or threatening to terminate any employee, or retaliating or discriminating against any employee in any other way, based on their belief that

8

such employee spoke with a U.S. Department of Labor, WHD investigator;

2. From telling anyone who works for them not to speak to representatives of the DOL or to provide false information to the DOL regarding the terms and conditions of their employment, or asking anyone who works for them to give them any documents or business cards provided by a representative of the DOL;

3. From obstructing the DOL's investigation in any way;

4. From obstructing the DOL's representatives from providing Defendants' employees with a hard copy of a statement informing them of their right to speak with representatives of the DOL free from retaliation or threats of retaliation or intimidation, as well as contact information for representatives of the DOL;

5. From terminating any employee prior to the preliminary injunction hearing; and

6. From destroying any records prior to the preliminary injunction hearing.

The Court further sets a preliminary injunction hearing for June 5, 2014 at 2:00 PM in Courtroom 2.  At the hearing, the Court will consider adding the additional requirements requested by Plaintiff.  Any response by Defendants to the preliminary

9

injunction motion, showing cause why the requested injunction should not be entered, must be filed no later than May 29, 2014.

IT IS SO ORDERED.

Dated: 5/22/14

CLAUDIA WILKEN
United States District Judge