IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS E. PEREZ, Secretary of Labor, United States Department of Labor,<br><br>        Plaintiff,<br><br>  v.<br><br>FATIMA/ZAHRA, INC., d/b/a LAKE ALHAMBRA ASSISTED LIVING CENTER, a California corporation; MEHRANGIZ SARKESHIK, an individual; and ABOLFAZL SARKESHIK, an individual;<br><br>        Defendants.<br>_____/ | No. C 14-2337 CW<br>ORDER GRANTING PRELIMINARY INJUNCTION AS MODIFIED<br><br>(Docket No. 3) |

On May 21, 2014, Plaintiff Thomas E. Perez, Secretary of the United States Department of Labor (DOL), moved for a temporary restraining order (TRO) and for an order to show cause (OSC) why a preliminary injunction should not be granted to enjoin Defendants Fatima/Zahra, Inc., d/b/a Lake Alhambra Assisted Living Center, Mehrangiz Sarkeshik, and Abolfazl Sarkeshik from interfering with Plaintiff's investigation of Defendants' workplace under the Fair Labor Standards Act (FLSA). The Court granted the TRO as modified and set an OSC hearing. Docket No. 6. Defendants filed an opposition to the OSC. On June 5, 2014, the Court held an OSC hearing. Investigator Hart appeared at the hearing but Dr. and Ms. Sarkeshik did not. Having considered the papers and the

arguments of counsel, the Court GRANTS the requested preliminary injunction, as modified.

BACKGROUND

Lake Alhambra, which is owned by Dr. Abolfazl Sarkeshik and his wife Ms. Mehrangiz Sarkeshik, is a care center for patients with dementia, Alzhemier's disease, and mental illness. Hart Decl. ¶ 14. Ms. Sarkeshik manages the staff and sets their schedules. Id.

In 2007, an investigation by the DOL established that Lake Alhambra violated the overtime and record-keeping provisions of the FLSA. Hart Decl. ¶ 4. These provisions require employers to maintain accurate time and payroll records to guarantee that employees are paid a minimum wage for all hours worked and paid overtime wages when they are due. See 29 U.S.C. §§ 206, 207, 211, 215. As a result of the finding, Defendants agreed to come into compliance with the FLSA by paying back wages, paying overtime, and maintaining time and payroll records. Hart Decl. ¶ 4.

In March 2014, a confidential informant lodged a complaint with the DOL that Lake Alhambra was again not paying overtime. Id. ¶ 3. Investigator Edward Hart, Jr. was assigned to investigate the complaint. Id. On March 19, 2014, Investigator Hart went to Lake Alhambra to observe business operations, to interview the employer and employees about hours worked and wages paid, and to obtain documents such as payroll records. Id. ¶ 5.

The DOL and Defendants present vastly different versions of what occurred next.  According to Investigator Hart, the investigation occurred as follows.  On that day, he was wearing clothing with the Wage and Hour Division insignia with "Department of Labor" and "Wage and Hour Investigator" embroidered below the insignia.  Id.  Investigator Hart identified himself as a Wage and Hour Investigator to an employee who answered the door, Maricela Torres, and showed her his credentials.  Id.  He stated that he was conducting an investigation of the premises and asked to speak to the manager.  Id. ¶¶ 4-5.  Ms. Torres put Ms. Sarkeshik on the phone, who yelled at Investigator Hart, saying, "You didn't tell me you were coming" and "Leave right now!"  Id. ¶ 5.  Investigator Hart overheard Ms. Sarkeshik telling the employee over the phone, "You need to get him out of there or you will be fired!"  Id. ¶ 7.  Ms. Sarkeshik arrived and had called the police, who arrived shortly thereafter; the police refused to remove Investigator Hart.  Id. ¶¶ 8-9.  Ms. Sarkeshik requested that Investigator Hart speak to her attorney and, while he did so, he noticed Ms. Sarkeshik speaking quickly and intently to her employees, who seemed uncomfortable.  Id. ¶ 10.  Investigator Hart alleges that some employees initially showed interest in speaking to him, saying, "If it's not to get anyone in trouble, we'll talk."  Id. ¶ 11.  However, after Ms. Sarkeshik again spoke to the employees, she told Investigator Hart in front of the employees that "no one wants to talk to you."  Id. ¶ 12.  Investigator Hart asked, "Are

3

you sure?" and Ms. Sarkeshik responded, "Yes, and you are delusional; they did not want to speak with you." Id.  Ms. Sarkeshik's son-in-law, who was also present, added, "You need to respect their rights." Id.  Nevertheless, Investigator Hart was able to speak to the employees to get each of their names, but all of them declined to answer any of his questions. Id. ¶ 13.  One employee stated she was uncomfortable talking to him, while another stated that Ms. Sarkeshik told the employees that if they talked to the DOL, they would not have a job. Id. ¶ 13.

On March 24, 2014, Investigator Hart met with Dr. Sarkeshik and his attorney. Id. ¶ 14.  Dr. Sarkeshik and his attorney agreed they would cooperate fully with the investigation and provided some documents, including some time cards and the names and addresses of employees. Id. ¶ 15.  Time cards created after the end of October 2013 did not identify the date or pay period, but only the day of the week. Id.  Investigator Hart sent letters to the employees at the addresses provided, but about half were returned as undeliverable. Id. ¶ 16.  Investigator Hart was able to speak to a few employees, who told him that Ms. Sarkeshik told them that if they received a letter from the DOL, they should tell her and not respond to the letter. Id. ¶ 17.  The employees stated that many others were too scared to talk to or cooperate with the DOL. Id.

Defendants filed declarations by Ms. Sarkeshik and Ms. Torres reporting a different story.  Ms. Torres stated that Investigator

4

Hart mentioned he was from the DOL and did not deny that he was wearing his identifying insignia. Torres Decl. ¶ 3. However, Ms. Torres said Investigator Hart did not state his name or show her his credentials. Id. Ms. Torres called Ms. Sarkeshik. Id. ¶ 4. Ms. Sarkeshik acknowledges that she spoke to Investigator Hart over the phone before she arrived at the office, but disputes that she knew who he was or why he was there. Sarkeshik Decl. ¶ 3. This is contradicted by Ms. Torres, who said that she told her employer someone from the DOL was at Lake Alhambra. Torres Decl. ¶ 4. Ms. Sarkeshik said that all she could "remember was that he spoke to me in a very short, mean, and rude manner." Id. She told him she was on the way back to the office, and Investigator Hart hung up the phone. Id. Ms. Sarkeshik flatly denies that she yelled at Ms. Torres, stating, "At no point did I tell Maricela, 'You need to get him out of there or you will be fired!'" Id. ¶ 15. Ms. Torres corroborates this point. Torres Decl. ¶ 11. Ms. Sarkeshik then called Ms. Torres, who said Investigator Hart was looking around the private office where only staff is permitted and had started taking photos. Id. ¶ 6; Sarkeshik Decl. ¶ 5. Ms. Torres alleges she told him to wait in the lobby, but he refused and said, "I'm going to take what I need before I leave." Torres Decl. ¶ 6. Ms. Sarkeshik asked to speak to Investigator Hart again, questioned why he was taking photos of her personal items, and Investigator Hart hung up again. Sarkeshik Decl. ¶ 5. Ms. Torres was frightened by Investigator Hart's behavior and asked

5

him for identification. Torres Decl. ¶ 8. In response, she alleges he "threw an identification card at the desk and demanded [that she] fax it to" Ms. Sarkeshik. Id. Because Ms. Torres did not have access to a fax machine, she did not do so. Id.

Ms. Sarkeshik states that she was concerned that Investigator Hart was unauthorized because the home is in an unsafe neighborhood of downtown Antioch where homeless people or vagrants often try to gain entry. Sarkeshik Decl. ¶ 8. Previously, a homeless and mentally unstable man tried to enter the premises stating that he was a CIA agent, but Defendants refused him entry. Id. ¶ 7. Ms. Sarkeshik felt scared and called the police, who arrived at about the same time as she did. Id. ¶ 16. Investigator Hart then produced his credentials to the police, who informed Ms. Sarkeshik of his position and purpose. Id. Ms. Sarkeshik called her attorney, who arrived and spoke with Investigator Hart. Id. ¶ 17. She alleges she cooperated fully after that. Id. She denies that she ever threatened to fire employees if they spoke to Investigator Hart or complied with the investigation. Id. ¶ 18. She denies that she said at any point that "no one wants to talk to you" or "yes, you are delusional; they did not want to speak with you." Id. ¶ 19. She states she is unaware that anyone received a letter from the DOL and denies that she tried to take the letters from them. Id. ¶ 20.

Ms. Sarkeshik also denies that Defendants purposely omitted the dates or pay periods from the employees' time cards. Id.

6

¶ 21-22.  She states that the omissions were inadvertent and the result of purchasing a new time card machine, which has now been replaced with a new machine that does stamp the day and times when the employees punch in.  Id.

Before the OSC hearing, the DOL filed supplemental evidence that Defendants retaliate against their employees.  On May 27, 2014, Investigator Hart again visited Lake Alhambra and was able to speak individually with each of the five employees on duty.  Supplemental Hart Decl. ¶ 12.  One employee, Blanca, stated publicly, "Do we have to meet with you?" and that she was very happy working there.  Id.  While Investigator Hart spoke to the employees, Defendants' lawyer sat outside.  Id. ¶ 14.  All of the workers appeared nervous to be speaking with Investigator Hart, and one repeated that she worked "eight hours a day," as if coached.  Id. ¶ 13.  Employees told Investigator Hart that Defendants often reduce employees' hours or completely remove them from the schedule to punish them for doing something Defendants do not like, such as complaining or engaging in protected activities.  Id. ¶ 8.  The hours on the schedule dictate the amount each employee is paid.  Id. ¶ 17.  The employees who spoke to Investigator Hart on May 27, 2014 all saw their schedule hours reduced the following week, except Blanca, who made the public statement that she did not want to speak to Investigator Hart.  Id. ¶¶ 16-17; see also Exs. C-E.  For example, the schedule shows that the employee who was in the room with Investigator Hart for

7

the longest period saw her hours reduced from thirty-nine to twenty-seven. Id., Ex. E.

The DOL also filed a number of declarations under seal of employees who wished to remain anonymous. See Docket No. 11. The employees corroborate that Investigator Hart acted calmly when he first visited Lake Alhambra. The employees also state that Ms. Sarkeshik, as well as other employees of Lake Alhambra purportedly following Defendants' directions, have tried to intimidate the employees and discourage them from talking to the DOL.

## LEGAL STANDARD

To obtain either a TRO or a preliminary injunction under Federal Rule of Civil Procedure 65, the moving party must demonstrate "(1) a likelihood of success on the merits; (2) a significant threat of irreparable injury; (3) that the balance of hardships favors the applicant; and (4) whether any public interest favors granting an injunction." Raich v. Ashcroft, 352 F.3d 1222, 1227 (9th Cir. 2003); see also Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 374 (2008). The Ninth Circuit has recognized that an injunction could issue if "serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor," so long as the plaintiff demonstrates irreparable harm and shows that the injunction is in the public interest. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011) (citation and internal quotation marks omitted). Injunctive relief is "an

extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter, 555 U.S. at 22.

## DISCUSSION

To enforce the FLSA, Congress empowered the Secretary to investigate employers for compliance with the act, including the right to "enter and inspect such places and such records (and make such transcriptions thereof), question such employees, and investigate such facts, conditions, practices, or matters as he may deem necessary or appropriate to determine whether any person has violated any provision of this chapter, or which may aid in the enforcement of the provisions of this chapter."  29 U.S.C. § 211.  The Secretary may conduct such an investigation as long as there is a "reasonable ground" for doing so.  CSG Workforce Partners, LLC v. Watson, 512 F. App'x 830, 835 (10th Cir. 2013); Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 208 (1946) (administrative investigation must be reasonable).  The FLSA grants the Secretary these investigatory powers because the statute's enforcement depends "not upon continuing detailed federal supervision or inspection of payrolls, but upon information and complaints received from employees seeking to vindicate rights claimed to have been denied."  Kasten v. Saint-Gobain Performance Plastics Corp., 131 S. Ct. 1325, 1333 (2011).  To encourage workers to provide freely the information necessary for enforcement, the FLSA further protects workers who cooperate

9

with the Secretary from retaliation by their employers.  29 U.S.C. § 215.  This anti-retaliation provision prevents "fear of economic retaliation from inducing workers quietly to accept substandard conditions."  Kasten, 131 S. Ct. at 1333.

The Court finds that there is substantial evidence that, during Investigator Hart's visit and afterwards, Ms. Sarkeshik threatened employees that they would lose their jobs if they cooperated with the investigation.  Despite assurances by Defendants' attorney, there is evidence that Ms. Sarkeshik retaliated against employees who spoke to Investigator Hart.  The undisputed evidence shows that employees who did so had their hours and pay reduced the following week.  Accordingly, the DOL is likely to succeed in establishing that Defendants engaged in retaliatory activity against their employees.

Further, the DOL also demonstrates a likelihood of success on the merits of its recordkeeping FLSA claims.  The records must be "clear and identifiable by date or pay period."  29 C.F.R. § 516.1.  At least some of the timecards produced by Defendants do not identify the dates or pay period.  Hart Decl. ¶ 15, Exs. B-C.

The impact of Defendants' actions, if left unchecked, is severe.  Irreparable harm will ensue because the DOL will not be able to enforce fully the protections of the FLSA.  Ms. Sarkeshik's conduct appears to have chilled several employees from speaking to the DOL.  Should Ms. Sarkeshik's retaliation continue, the DOL will not be able to gather the information necessary to

conduct the wage and hour investigation.  Employee interviews play a crucial role in establishing FLSA violations.  See id. ¶ 19; Kasten, 131 S. Ct. at 1333.  If Defendants are able to block the DOL's investigation, then Defendants' employees' rights to receive fair pay and working conditions may be irreparably injured.  See Arcamuzi v. Cont'l Air Lines, Inc., 819 F.2d 935, 938-39 (9th Cir. 1987) (where "employees may be deterred from engaging in legitimate conduct," retaliation for the exercise of protected activity represents "possible irreparable harm far beyond economic loss").

The balance of the equities and the public interest weigh in the DOL's favor.  The Court gives substantial weight to the fact that "the secretary seeks to vindicate a public, and not a private right."  Perez v. Jie, 2014 WL 1320130, at *2 (W.D. Wash.) (quoting Marshall v. Chala Enterprises, Inc., 645 F.2d 799, 808 (9th Cir. 1983)).  There is a strong public interest in favor of enforcement of the FLSA, which seeks to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living" of workers.  29 U.S.C. § 202(a).  On the other hand, Defendants have no legitimate interest in preventing the DOL from conducting a reasonable and lawful investigation.

At the OSC hearing, Defendants stated that they did not oppose entry of a preliminary injunction, but urged that certain terms be narrowly tailored.  Defendants asked that the statements to be read by the DOL and signed by Ms. Sarkeshik be revised so

11

that they do not contain any admissions of wrongdoing.  In response, the DOL submitted revised statements that do not contain any such admissions.  Defendants also objected to the provision restricting them from reducing the schedule of any employee below thirty-six hours per week prior to final resolution of this action because some employees might regularly work a schedule of less than thirty-six hours.  This concern can be addressed by a provision requiring that, for any employee whose median weekly schedule over the last three months does not exceed thirty-six hours, Defendants need only refrain from reducing that employee's schedule below her three-month median.

## CONCLUSION

Defendants Fatima/Zahra, Inc., doing business as Lake Alhambra Assisted Living Center, and its owners Mehrangiz Sarkeshik and Abolfazl Sarkeshik, along with their agents, attorneys, employees, and all those in active concert or participation with Defendants, are hereby enjoined:

1. From terminating or threatening to terminate any employee, or retaliating or discriminating against any employee in any other way, based on their belief that such employee spoke with or otherwise cooperated with the DOL;

2. From telling anyone who works for them not to speak to representatives of the DOL or to provide false information to the DOL regarding the terms and

       conditions of their employment, or asking anyone who works for them to give them any documents or business cards provided by a representative of the DOL;

3. From obstructing the DOL's investigation in any way;

4. On Monday, June 23, 2014, to allow a representative of the DOL, in the presence of Mehrangiz Sarkeshik and Abolfazl Sarkeshik and their attorneys, to read aloud in both English and Spanish, during the morning shift, afternoon shift, and evening shift of the employees' paid working hours, the following statement to all employees employed at Lake Alhambra informing them of their right to speak with representatives of the DOL free from retaliation or threats of retaliation or intimidation by Defendants. Defendants and their attorneys shall be videotaped throughout the duration of the reading of the statement; no employee shall be videotaped.

> You are protected by the Fair Labor Standards Act and have the right to participate freely in the U.S. Department of Labor's investigation into your employer's pay practices. You have the right to speak freely with investigators or other officials from the Department of Labor. Your employer must not retaliate against you in any way because you spoke with the Department of Labor.
>
> The U.S. District Court for the Northern District of California has ordered Mehrangiz (Gita) Sarkeshik, and anyone acting on her behalf, not to retaliate against, threaten to retaliate against, intimidate, or attempt to influence or in any way threaten employees from providing information to

13

       the Department of Labor.  She cannot fire, threaten to fire, or reduce your hours below 36 hours or your regular working hours, whichever is lower. She cannot encourage your coworkers to engage in retaliation or assist her in retaliation.  She cannot turn a blind eye to retaliation by your coworkers, or instruct one employee to tell another employee that they will be fired if they cooperate with the Department of Labor.  She cannot threaten to have any employee deported or refer to her immigration status because of cooperation or perceived cooperation with the Department of Labor.

5. To post at Lake Alhambra a hard copy of the statement above, in both English and Spanish, and to permit a representative of the DOL to provide each employee with a copy of the written statement, as well as contact information for representatives of the DOL in English and in Spanish;

6. To provide a written statement by Mehrangiz Sarkeshik addressed individually to all current and former employees, along with its Spanish translation, signed and dated, as follows.  (Defendants must file signed copies of these letters with the Court within one week of entry of this preliminary injunction.)

       I, Mehrangiz Sarkeshik, hereby agree that no employer can fire any employee for cooperating with the Department of Labor.  If you believe any statement to the contrary, that is not correct. Neither I nor any other employer may threaten any employee with deportation or otherwise reference their immigration status in retaliation for cooperation with the Department of Labor.  Neither I nor any other employer may give a bad reference or in any way discriminate against any employee in retaliation for their cooperation with the Department of Labor.

14

7. From threatening to have any employee deported, or referring to any employee's immigration status, because of cooperation or perceived cooperation with the DOL;

8. From encouraging employees to engage in retaliation against their coworkers, or turning a blind eye to retaliation by coworkers, or instructing one employee to tell another that the employee will be fired for cooperating with the DOL;

9. To maintain accurate records of the hours worked and wages paid to their employees, as required under the FLSA, including having the date, month, day, and year, as well as the correct hours worked, stamped on each time card;

10. From destroying any records or modifying any past records, including all versions of records, such as those containing handwritten notations, before final resolution of this action;

11. To provide, within one week of entry of this preliminary injunction, an accurate list of persons employed with Defendants in the past three years, including former employees, with their address, phone number, cell phone number, e-mail address, hourly rate or salary, job title, hire date, and termination date if applicable;

15

12. From terminating, laying off, or otherwise ending employment of any employee, without providing seven days advance written notice to the employee and to the DOL by copy to Celeste Hale, Assistant District Director, Wage and Hour Division, U.S. Department of Labor, 90 7th Street, Suite 12-100, San Francisco, California 94103, and Susan Seletsky in the Office of the Solicitor at seletsky.susan@dol.gov;

13. From reducing the weekly schedule of any employee below 36 hours or the employee's median weekly hours computed over the last three months, whichever is lower; and

14. From providing a job reference for any employee that states anything other than the employee's dates of employment, position, and salary.

IT IS SO ORDERED.

Dated: 6/20/2014

CLAUDIA WILKEN
United States District Judge